668 So.2d 1310 (1996)
J.H. COLVIN, Jr., Plaintiff-Appellee
v.
FRANKLIN PARISH SCHOOL BOARD, Defendant-Appellant.
No. 28718-CA.
Court of Appeal of Louisiana, Second Circuit.
February 22, 1996.
John Barkley Knight, Jr., Winnsboro, for appellant.
Michael E. Kramer, Winnsboro, for appellee.
Before BROWN and GASKINS, JJ., and CLARK, J. Pro Tem.
GASKINS, Judge.
Plaintiff, J.H. Colvin, Jr., filed suit seeking to have the results of a tax renewal election declared null and void. Mr. Colvin, a voter residing in School District 9, asserted that over 200 ineligible voters were allowed to vote in the election, and that the tax proposition would not have passed, but for the ineligible *1311 voters who were allowed to participate. The trial court rendered judgment for the plaintiff and declared the election null and void; the Franklin Parish School Board timely filed a motion for appeal. For the following reasons, we reverse the trial court, render judgment for the Franklin Parish School Board and reinstate the election results.

FACTS
Voters in the tax renewal proposition cast ballots at five precincts throughout School District 9. The evidence at trial revealed the following votes were cast:

 YES NO
Precinct 7-1 88 84
Precinct 7-2 101 93
Precinct 8-1A 6 6
Precinct 8-2 86 76
Precinct 8-1 33 27
Absentee 25 18
 ____ _____
Total 339 304

Due to either human error or malfunction in the lock-out mechanism on voting machines, ineligible voters who lived outside of the taxing district were allowed to vote on the tax proposition in three precincts. As set forth in the chart below, only four ineligible votes were cast in precinct 7-1. In sharp contrast, only five out of 162 votes cast in precinct 8-2 were cast by eligible voters, while only one of the 60 voters casting ballots in Precinct 8-1 was eligible to vote in the election. The 206 votes recorded in precincts 7-2 and 8-1A were cast by eligible voters. The plaintiff presented no evidence regarding the 43 absentee votes and does not dispute on appeal the facts concerning the number of eligible and ineligible voters at each polling place.
To recapitulate, the votes in dispute are shown below:

 YES NO VOTES AT ISSUE
Precinct 7-1 88 84 4 ineligible votes cast
Precinct 7-2 101 93 *
Precinct 8-1A 6 6 *
Precinct 8-2 86 76 only 5 eligible votes
 cast
Precinct 8-1 33 27 only 1 eligible vote
 cast
Absentee 25 18 *
 ____ ____
Total 339 304
* all votes eligible and uncontested

LAW
Contrary to plaintiff's assertion that the election should be declared null and void simply because a large number of ineligible voters were allowed to participate, the Election Code provides: when one or more illegal or fraudulent votes are cast in a contested election, such votes should be subtracted from the total votes cast for or against a proposition. Then, after considering all the evidence, the court should determine the result of the election. La.R.S. 18:1431. The Election Code states that an election should be declared void only: (1) if it is impossible to determine the result of an election or (2) the number of unqualified voters who were allowed to vote was sufficient to change the result of the election if they had not been allowed to vote. La.R.S. 18:1432.
In an election contest which seeks to have the results of an election declared null and void, the plaintiff bears the burden of proof. The plaintiff's burden is two-fold. The plaintiff must first prove either fraud or irregularities are present. Then the plaintiff must prove that, but for the fraud or irregularities, the outcome of the election would have been different. Huckaby v. Hunter, 427 So.2d 1 (La.App.2d Cir.1983), writ denied, 427 So.2d 1197 (La.1983). In Moreau v. Tonry, 339 So.2d 3 (La.1976), the Louisiana Supreme Court rejected the argument advanced by the plaintiff that if the number of irregularities exceed the difference between the candidates, the outcome of the election cannot be determined. The Moreau court held that an election may only be upset if the one contesting the election can show that, but for irregularities or fraud, the election result would have been different.
We also observe that while plaintiff neither presented evidence concerning, nor raised a specific challenge to the validity of the absentee votes cast, the law provides that a challenge to an absentee ballot on specified grounds, including the qualifications of a voter, must be brought no later than the fourth day before the election for which the ballot is challenged. La.R.S. 18:1315(A)(1). See also *1312 Davis v. McGlothin, 524 So.2d 1320 (La.App. 3d Cir.1988), writ denied, 525 So.2d 1046 (La.1988).

ANALYSIS
The total number of eligible voters who cast a ballot in the tax renewal proposition election was 423. Because plaintiff is required to prove that, but for the irregularity, the outcome of the election would have been different, the plaintiff must demonstrate, that but for the ineligible voters, the tax renewal proposition would not have received over 50% of the vote. Our calculations reveal that even when the ineligible voters are removed from the equation, more than 50% of the eligible voters supported the tax renewal proposition.
Utilizing our previously outlined chart, as supplemented below with the contested votes, it becomes clear that the proposition passes even when the contested votes are counted against the proposition.

 Actual Returns Contested Votes Contested Votes Counted to
 Plaintiff's Benefit
 YES NO YES NO
Precinct 7-1 88 84 4 ineligible votes cast 84 84
Precinct 7-2 101 93 * 101 93
Precinct 8-1A 6 6 * 6 6
Precinct 8-2 86 76 5 eligible votes cast 0 5
Precinct 8-1 33 27 1 eligible vote cast 0 1
Absentee 25 18 * 25 18
 _____ ____ _____ ____
Total 339 304 216 207
* all votes eligible and uncontested

As shown above, the 107 affirmative votes cast in precincts 7-2 and 8-1A were valid, as were the 25 affirmative absentee votes. The addition of the absentee votes results in 132 affirmative votes in favor of the tax proposition. Finally, the registrar of voters testified only four votes cast in precinct 7-1 were invalid. We will presume the four ineligible votes were cast in favor of the tax proposition and subtract four votes from the 88 affirmative votes cast, leaving 84 affirmative votes in precinct 7-1. The addition of these 84 votes results in a total affirmative vote of 216. Because the 216 affirmative votes constitute over 50% of the eligible votes cast, we hold the plaintiff failed to meet his burden of proof that, but for the irregularities in the election, the tax renewal would not have passed. Accordingly, we reverse the trial court, render judgment for the Franklin Parish School Board and reinstate the elections results.
Before concluding, we note the difficult position in which the trial court was placed in this matter. The trial court had a very limited time to render a decision under the expedited procedures applicable in election challenges, and some important testimony was difficult to follow even with the benefit of a transcript.

CONCLUSION
For the foregoing reasons, we reverse the trial court, render judgment in favor of the Franklin Parish School Board, and reinstate the results of the November 18, 1995, School District 9 tax renewal election. Costs of this appeal are assessed against the plaintiff, J.H. Colvin Jr.
REVERSED AND RENDERED.