524 So.2d 1320 (1988)
Sammy DAVIS, Jr., Plaintiff-Appellant,
v.
Glen McGLOTHIN, Defendant-Appellee.
No. 88-322.
Court of Appeal of Louisiana, Third Circuit.
March 30, 1988.
Samuel Thomas, Tallulah, for plaintiff-appellant.
*1321 Lloyd Love, Norman Magee, Ferriday, and Dan Richey, Vidalia, for defendant-appellee.
Before STOKER, DOUCET and YELVERTON, JJ.
STOKER, Judge.
This is an election contest. The plaintiff-appellant, Sammy Davis, Jr., seeks to have the election which resulted in the victory of defendant-appellee, Glen McGlothin, set aside. From a judgment maintaining an exception of no cause of action, plaintiff appeals.
The Ferriday municipal elections were held on March 8, 1988. There were three candidates for Mayor: Sammy Davis, Jr., Glen McGlothin and Eddie Newman. Of the 1835 votes cast for the office of Mayor in the primary, McGlothin received 936, Davis received 772, and Newman received 127. McGlothin was declared the winner, and appellant, Sammy Davis, Jr., filed this law suit to contest the election.
The petition alleged that except for substantial irregularities, errors, fraud, and other unlawful activities prior to and at the time of the election, petitioner would have been elected. The suit sought to have the petitioner declared the winner, or in the alternative declare the election void and a new primary election ordered. The attached exhibits challenged the votes of 58 voters accused of various voting irregularities. The petition and attached exhibits have been made a part of this opinion. (See attached appendix).
The defendant, Glen McGlothin, filed an exception of no cause of action contending that Davis would not have been elected even if he were successful in all 58 challenges. A hearing was held on March 18, 1988. The trial court sustained the exception of no cause of action as to plaintiff's request to be declared the winner, but refused to dismiss the suit on the ground plaintiff had challenged enough votes to require a run off election and plaintiff had prayed for a new primary election.
At this point plaintiff's attorney asked the Court "to give us an opportunity to put into evidence on this particular motion, and I think that clearly on the Motion of No Cause of Action, I can put evidence in as it relates to that motion." Mr. Thomas, plaintiff's attorney, then called the Registrar of Voters to testify concerning his records in connection with the exception of no cause of action. Defendant's attorney offered no objection to the testimony.
Through the examination of the petition and the attached lists of voters challenged as well as the testimony of Mr. J.P. House, the Registrar of Voters for Concordia Parish, thirty-one of the fifty-seven contested votes were stricken from the plaintiff's list of challenges. The trial court then sustained the plaintiff's exception of no cause of action and dismissed the suit.
Plaintiff was then permitted to make a proffer of his own testimony regarding his due diligence in connection with his failure to timely challenge voters, either in advance or on election day. The parties had stipulated that no formal challenges had been made to the qualifications or right to vote of voters either before the election or at the polls under the provisions of LSA R.S. 18:191 et seq., or 18:1315, nor were any voters formally challenged at the polls on election day pursuant to R.S. 18:565.
The plaintiff has appealed raising the following issues: 1) whether the trial court erred in allowing defendant to present evidence at the hearing; 2) whether the trial court erred in sustaining defendant's exception of no cause of action; and 3) whether the trial court erred in failing to allow petitioner's witnesses to testify as to their non-residence status on the ground that petitioner failed to exercise due diligence in challenging the voters prior to or at the time of the election.
Plaintiff relies upon LSA-C.C.P. art. 931 in support of his argument that the trial court erred in allowing the defendant to present evidence at the hearing of the exception. LSA-C.C.P. art. 931 states in pertinent part as follows:
"No evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action." *1322 However, as the recent case of Boykin v. Foster, 493 So.2d 731 (La.App. 2 Cir.1986) stated:
Plaintiffs point out that under LSA-C. C.P. Art. 931 evidence is not admissible to judge an exception of no cause of action. However, when evidence is introduced without objection on an exception of no cause of action, the pleadings are deemed expanded to that extent. Jordan v. Sweeney, 467 So.2d 569 (La.App. 1st Cir.1985), writ denied 469 So.2d 985 (La.1985).
In this regard, we are not unmindful of American Creosote Company v. Springer, 257 La. 116, 241 So.2d 510 (1970), which, in dicta, specifically disapproved the practice of considering documents attached to pleadings in judging the validity of an exception of no cause of action. We are also mindful of Parks v. Winnfield Life Insurance Company, 336 So.2d 1021 (La.App. 3d Cir.1976). There, the Third Circuit, influenced by American Creosote, concluded that even where evidence is admitted without objection on an exception of no cause of action that this evidence may not be considered in evaluating the exception.
We determine that the evaluation of an exception of no cause of action by considering attachments to plaintiffs' petition is a different circumstance than that of evaluating evidence admitted without objection. By definition, a defendants' exception of no cause of action accepts the plaintiffs' allegations as true for the purposes of that exception. However, it does not accept the attached documents. On the other hand, if both the plaintiffs and defendants present evidence on an exception of no cause of action without objection, both sides have consented to the consideration thereof.
We see no useful purpose in a trial court reversal in circumstances such as presented here. A remand would only amount to a reconsideration of the same evidence under the guise of different label. The simplest and most judicially economical procedure is to follow the course of the First Circuit in Jordan.

In the present case plaintiff's attorney requested that the trial court allow him to call Mr. House to testify regarding the exception of no cause of action. There was clearly no objection to the presentation of this testimony by plaintiff. Under these circumstances where the plaintiff initiates the evidence, we see no useful purpose in a trial court reversal. A remand would only amount to a reconsideration of the same evidence. Therefore, the pleadings are deemed to be expanded to the extent of the evidence presented at the hearing on the exception of no cause of action.
It is well settled that general charges of fraud and irregularities are not sufficient to state a cause of action in an election contest suit. Wayne v. Green, 389 So.2d 102 (La.App. 1 Cir.1980) writ den. 390 So.2d 494 (La.1980). LSA-R.S. 18:1406 requires a plaintiff contesting an election to "set forth in specific detail the facts upon which the objection or contest is based."
In the present suit plaintiff's petition originally set forth specific facts challenging 58 voters. However, the trial court, upon examination of the original pleadings and "expanded pleadings" determined that plaintiff's petition only alleged specific facts which could result in the challenge of 27 votes. Since the challenge of 27 votes could not effect the outcome of the election, the trial court sustained the defendant's exception of no cause of action.
In determining whether the trial court erred in finding that plaintiff's petition failed to state a cause of action, we must examine whether the trial court was correct in striking 31 of the challenged votes from the plaintiff's list for failure to allege sufficient facts to challenge the votes. These voters may be categorized into six groups: persons on probation, absentee voters, voters allegedly receiving compensation, "nonresident" voters, "deceased" voters, and persons voting twice.

Persons on Probation
LSA-R.S. 18:102 provides in pertinent part as follows:
"No person shall be permitted to register or vote who is: *1323 (1) under an order of imprisonment, as defined in R.S. 18:2(2), for conviction of a felony."
On petitioner's list of challenges, four names were challenged by reason of being on probation. The list clearly shows that three of these persons were convicted and on probation for misdemeanors, and not felonies. Plaintiff's counsel agreed and offered no objection. The trial court properly struck these three persons from plaintiff's list for failing to state facts sufficient to support a challenge of these votes.

Absentee Voters
The trial court struck eight names from plaintiff's challenge list who voted by absentee ballot but were in town on election day. We agree with the trial court that a voter who votes by absentee ballot cannot be challenged on the grounds that he remained in town on election day. LSA-R.S. 18:1305 merely prohibits a person who has voted by absentee ballot from voting at the polls on election day. The trial court correctly struck these eight voters from plaintiff's challenge list.
The trial court also struck four persons who voted by absentee ballot from plaintiff's list, for failure of the plaintiff to challenge these votes timely.
LSA-R.S. 18:1315(A) provides in pertinent part:
"A. (1) A candidate or his representative, a member of the board, or a qualified elector may challenge an absentee ballot for the grounds specified in R.S. 18:565(A), by personally filing his written challenge with the registrar, no later than the fourth day before the election for which the ballot is challenged. Such challenge shall be on a form provided by the commissioner of elections."
The testimony of Mr. House was clear that the list of persons who voted absentee was published daily and posted on the wall of the office of the Registrar of Voters and that no challenges were filed in this election. Since R.S. 18:1315(A) requires plaintiff's challenge to be made no later than the fourth day before the election, the plaintiff's present challenge is untimely and the trial court properly removed these names from the plaintiff's challenge list.

Nonresidents
Five individuals which were challenged by plaintiff as nonresidents were stricken by the trial court from plaintiff's list based on the testimony of Mr. House. Mr. House testified that two of the voters did not vote in this election, while he personally knew that three of the voters on the list lived in the city limits and were not nonresidents. The trial court was correct in striking these names from the list.

Deceased Voters
Two individuals which were challenged by plaintiff as being deceased at the time of the election were also stricken by the trial court from plaintiff's list based on the testimony of Mr. House. Mr. House testified that one of the voters did not vote in the election and that the other voter was still living and employed by the Concordia Parish Police Jury. Under these circumstances the names were properly stricken from plaintiff's list.

Persons Voting Twice
Three individuals which were challenged by plaintiff as persons who voted twice were stricken by the trial court from plaintiff's list based on the testimony of Mr. House. His testimony revealed that the vote register revealed that two of the individuals did not vote twice. The evidence also clearly revealed that the other "voter" was in reality two different people of different races. Under these circumstances, the names were properly stricken.

Voters Receiving Compensation
Plaintiff in his petition alleged that four voters received or were promised compensation for their vote and two persons were intimidated by individuals other than election officials. Finding no authority for plaintiff to challenge voters on this ground, the trial court struck these names from the plaintiff's challenge list.
*1324 Although LSA-R.S. 18:1461(A)(4) and LSA:R.S. 14:119 makes such behavior a crime, we can find no authority which allows this court to disqualify these votes in an election. Therefore, these six names were properly stricken from plaintiff's list.
However, even if we were to find that the trial court erred in striking these six votes, this would not have effected the outcome of the election. Pursuant to LSA-R.S. 18:1432 "[i]f the trial judge in an action contesting an election determines that:... (3) the number of unqualified voters who were allowed to vote by the election officials was sufficient to change the result of the election if they had not been allowed to vote, ... the judge may render a final judgment declaring the election void ...". In the present case, if we were to assume as true that plaintiff could prove 33 voters were unqualified to vote in this election, then the final vote count would have resulted in 1802 total qualified votes with McGlothin receiving a majority of 903 votes. Under these facts the result of the election would have remained the same, McGlothin the winner.
Since we have determined that the trial court properly struck 31 of the voters off of the plaintiff's challenge list, only 27 viable challenges remained in his petition. If plaintiff were successful in all 27 challenges, and these were stricken from the vote count, this number would not be sufficient to vary the outcome of the election. McGlothin would still have a majority of the votes cast. Therefore, the trial court at this point properly sustained defendant's exception of no cause of action.
Plaintiff also alleges that the trial court erred in not allowing plaintiff's witnesses to testify as to their nonresidence status on the ground that petitioner failed to exercise due diligence in challenging the voters prior to the election. However, the record does not reveal that plaintiff attempted to proffer the testimony of these witnesses. Therefore, we will discuss whether this testimony was necessary.
LSA-R.S. 18:1434 states as follows:
"An objection to the qualifications of a voter or to an irregularity in the conduct of the election which, with the exercise of due diligence, could have been raised by a challenge of the voter or objections at the polls to the procedure is deemed waived."
In Veuleman v. O'Con, 417 So.2d 131 (La.App. 3 Cir.1982) this Court held that voters who have not properly registered and qualified to vote must be formally challenged either before or at the time they offer to vote, or pursuant to R.S. 18:1434 the challenge is deemed waived. In Veuleman v. O'Con, supra, the plaintiff challenged the qualification of a voter after the election. The testimony revealed that the plaintiff's alleged mistaken identity of the voter illustrated his lack of due diligence. Therefore the plaintiff was deemed to have waived the challenge of that voter.
In the present case, the plaintiff was allowed to present his own testimony by proffer to show due diligence. The plaintiff testified that he received the voter registration list weeks prior to the election. However his testimony clearly revealed that prior to the election he did nothing to try to determine the qualifications of the voters on the list. He stated, "I had no need to because I've always won." The way he discovered the alleged irregularities is after the elections friends looked over the list of voters and told him about the irregularities such as nonresidence. If plaintiff had distributed the voter registration list to his workers prior to the election, the challenges for nonresidency could have easily been discovered. The only evidence presented by plaintiff at the proffer shows a lack of due diligence on plaintiff's part to determine the qualifications of the voters prior to the election. For this reason, any proffered testimony of the nonresident witnesses would have served no purpose.
For the reasons assigned the judgment of the trial court is affirmed at appellant's cost.
*1325 
The petition of SAMMY DAVIS, JR., domiciled in Concordia Parish, respectfully represents:

1.
GLEN McGLOTHIN, domiciled in Concordia Parish, Louisiana is made defendant herein. The Honorable Jim Brown, Secretary of State of Louisiana and Honorable Jerry Fowler, Commissioner of Elections are made defendants herein solely for the purpose of giving the trial court jurisdiction over those officers insofar as the judgment affects their ministerial duties.

2.
Petitioner and defendant were candidates for Mayor of the City of Ferriday in the primary election held on Tuesday, March 8, 1988.

3.
Petitioner received 772 votes in the election; defendant received 936 votes and Eddie Newman received 127.

4.
Except for substantial irregularities, errors, fraud and other unlawful activities prior to and in conduct of the election, petitioner would have been elected.

5.
Such irregularities, errors, fraud and other unlawful activities in the conduct of the election include, but are not limited to:
1) Votes casted for defendant illegally or fraudulently. (See Exhibit "A," pages 1-6)
2) Unqualified voters who resided outside of the city limits of Ferriday in excess of three (3) months were allowed to vote by election officials. (See Exhibit "B", pages 1-5).
3) Voters were given money and other items of value for their votes. (See Exhibit "B" pages 1 & 3).

6.
Petitioner could not have, with due dilligence, discovered the irregularities particularized above.
WHEREFORE, PETITIONER PRAYS THAT:
1) Defendant be served with citation directing him to appear in court at 10:00 A.M. on Friday, March 18, 1988.
2) That this petition be served on the defendant through the Clerk of Court for Concordia Parish, Louisiana, who is appointed as his agent of service of process in any action contesting an election of office.
3) That the Clerk immediately send notice together with a copy of citation, by certified mail, return receipt requested to addressee only, to the defendant at his domiciliary address as listed in the notice of candidacy.
4) For service of this petition and accompanying order on the defendant at his domicile.
5) That the trial of this case be held on Friday, March 18, 1988 at 10:00 A.M. at Vidalia, Louisiana and, after such trial;
*1326 6) There be judgment herein in favor of plaintiff, SAMMY DAVIS, JR., and against defendant, GLEN McGLOTHIN, declaring the election of GLEN McGLOTHIN to be unlawful and to declare petitioner, SAMMY DAVIS, JR., the winner of the primary election for Mayor of the City of Ferriday, or, alternatively, to declare the election of GLEN McGLOTHIN void and order a new primary election.
 /s/ Samuel Thomas
 SAMUEL THOMAS, ESQ.
 209 N. Walnut Street
 P.O. Box 814
 Tallulah, LA 71282
 XXX-XXX-XXXX
 EXHIBIT A (Page 1)
 VIOLATIONS OF LOUISIANA ELECTION CODE
THE FOLLOWING INDIVIDUAL(S) HAVE BEEN TENTATIVELY IDENTIFIED AS
BEING DECEASED PRIOR TO THE MUNICIPAL PRIMARY IN FERRIDAY AND AS
SUCH SHOULD HAVE BEEN PURGED FROM THE ACTIVE VOTER REGISTRATION
ROLLS. THE BELOW LISTED INDIVIDUAL(S) VOTED IN THE MUNICIPAL
PRIMARY ELECTION OR OTHER INDIVIDUALS VOTED FOR THOSE DECEASED
PERSONS.
 DECEASED
 MCKEEL, WILLIAMS 3/11/44 D.O.B.
 401 SOUTH 5TH STREET
 FERRIDAY, LA. 71334
 DATE OF DEATH: 1983
VOTING LOCATION CATHOLIC CENTER WARD 1 PRECINCT 1
NORRIS, ELNORA 1/07/1919 D.O.B.
321 SOUTH 10TH STREET
FERRIDAY, LA. 71334
DATE OF DEATH: 12/30/87
(SEE ATTACHED OBITUARY)
A COPY OF THE EXPANDED VOTER REGISTRATION LIST WITH THE INDIVIDUAL
CHECK IN WILL BE SUBMITTED WHEN OBTAINED FROM THE DEPARTMENT
OF ELECTIONS AND REGISTRATION.
EXHIBIT A (Page 2)
9 March 1988
SUBJECT: Persons found to have voted twice in the primary election of March 8, 1988.
Carolyn Jones voted absentee and voted on election day in Ward 1, Precinct 2.
*1327
Emma Lee Holmes voted absentee and voted on election day in Ward 1, Precinct 1.
Minnie G. Fletcher voted absentee and voted on election day in Ward 1, Precinct 2 as
Minnie F. Brooks.
 EXHIBIT A (Page 3)
 VIOLATION OF LOUISIANA ELECTION CODE
INDIVIDUAL(S) VOTED BY ABSENTEE BALLOT SUBMITTED DURING THE
PERIOD FENRUARY 25, 1988 TO MARCH 3, 1988 AND ALSO VOTED ON MARCH 8, 1988
IN THE MUNICIPAL PRIMARY ELECTION AT CITY HALL (WARD 1 PRECINCT 2).
REGISTERED VOTER USED TWO NAMES:
ABSENTEE BALLOTNAME UTILIZED WAS: FLETCHER, MIMMIE G.
CITY HALL PRECINCTNAME UTILIZED WAS: BROOKS, MINNIE F.
ADDRESS: 102 JONES STREET
FERRIDAY, LA. 71334
EXHIBIT A (Page 4)
9 March 1988
SUBJECT: Persons voting in the March 8 election who are currently on probation.

NAME WARD/PRCT PROBATION OFFENSE, DATE, COURT
Bryan L. Taylor 1/2 Simple Burglary, 10/11/85, Seventh Judicial
aka/Bryan L. Davis District
Triston Layne 2/1 Battery on Officer, 05/14/87, Seventh Judicial
McGlothin District
Bennie Quinn, Jr. 1/2 D.W.I., 09/09/87, Seventh Judicial District
Ike Washington, Jr. 1/1 D.W.I., expires 12/10/88, Seventh Judicial
 District

*1328
 Exhibit A-Page 5
9 March 1988
SUBJECT: Vote buying during absentee voting of the March 8, 1988 primary
election.
STATEMENT OF: Lyle Schiele
On Wednesday, 9 March 1988, at approximately 3:26 pm, I, Chief Lyle Schiele
of the Ferriday Police Department, received an orally recorded statement from
Mr. Johnny Wright of 414 South First Street in Ferriday, Louisiana. The recording
of the statement is contained in this file. This is only a synopsis of the statement.
During the statement, Mr. Wright told Chief Schiele that about two weeks
prior to the statement, during absentee voting, Bettle Johnson drove up beside
him by Oscar Watkins lounge in Ferriday. Wright explained that Johnson blew her
horn and hollered to Wright, "Come on, let's go vote." Wright stated that after
a short conversation, that Johnsons stated to him that she would give him a little
something. Wright stated that he entered the rear seat of Johnson's brown cadilac
and rode to Vidalia, Louisiana with Johnson and a passenger in the front seat known
to Wright to be Poon Savage. Wright stated that Johnsons gave him the number 31
and told him to vote for number 31. Wright stated that they parked outside of the
back of the courthouse in Vidalia and they exited the vehicle and went upstairs in
the courthouse. Wright stated that he alone entered the registrars office and voted.
Wright further stated that after leaving, Johnson gave Wright a ride back to Ferriday
and put Wright out at the same lounge where Wright had been picked up. Wright said
that Johnson gave Wright two dollars just prior to putting Wright out.
Wright stated that he had heard on the street that Johnson was giving out
3.00 dollars for absentee's and was somewhat disappointed that he only got two.
NO FURTHER AT THIS TIME
*1329
 Exhibit A-Page 6
March 10, 1988
SUBJECT: VOTING IRREGULARITIES ON MARCH 8, 1988
PRIMARY ELECTION.
STATEMENT OF LYLE SCHIELE:
ON THURSDAY, 10 MARCH 1988, AT ABOUT 8:00 A.M., I, CHIEF LYLE SCHIELE
ORALLY INTERVIEWED MR. ROBERT JAMES WINDON AT THE WINDON RESIDENCE. MR.
WINDON LIVES IN A WOODFRAME DUPLEX BEHIND THE GREATER ST. REED CHURCH ON
SOUTH EIGHT STREET IN FERRIDAY IN THE ALLEY.
DURING THE INTERVIEW WINDON STATED HE WAS CONTACTED BY MR. ROBERT
TAYLOR DURING ABSENTEE VOTING FOR THE ABOVE LISTED ELECTION. MR. WINDON
STATED THAT MR. TAYLOR GAVE, MR. WINDON A CARD WITH # 32 ON IT AND TOLD HIM
TO VOTE FOR THAT NUMBER. MR. WINDON FURTHER STATED THAT MR. TAYLOR THEN DROVE
HIM (MR. WINDON) TO THE COURTHOUSE IN VIDALIA TO VOTE ABSENTEE. MR. WINDON
STATED THAT AT THAT TIME HE FELT HE WOULD BE IN NEW ORLEANS ON ELECTION DAY.
MR. WINDON STATED HE FELT LIKE HE WAS MISLEAD DURING THE PROCEDURE. MR.
WINDON STATED HIS WIFE MRS. MARTHA MAE WINDON ALSO WENT WITH THEM AND VOTED.

 EXHIBIT B (Page 1)
WITNESS LIST LOCATION TO BE SERVED REASON
1. Mary McCoy 908 Chauvin Street (behind Received
 residence) voting absentee for # 31
 Ferriday, La.
2. Lionel Jones 908 Chauvin Street Received compensation for
 Ferriday, La. voting absentee for # 31
3. Johnny Wright 414 South First Street Received compensation for
 Ferriday, La. voting absentee for # 31
4. Emma Lee Leonard 304 Georgia Ave. Was promised compensation
 Ferriday, La. for voting absentee for
 # 31
5. Poon Savage 508 S. 10th Accused by above of giving
 Ferriday, La. and/or promising compensation
 for vote.
6. Bettie Jean Johnson North West corner of Sixth Accused by above of giving
 Street and Delaware Avenue
 in Ferriday, La.

*1330
7. Robert James Windon Duplex in Alley behind Greater Voted absentee and was
 St. Reid Church on South given number 32 to vote
 Eighth Street for against his will.
 Ferriday, La.
8. Martha Mae Windon Duplex in Alley behind Greater Voted Absentee and was
 St. Reid Church on South given number 32 to vote
 Eighth Street in Ferriday, La. for against his will.
9. Bryan L. Taylor 109 Concordia Drive On probation at time of
aka/Bryan L. Davis Ferriday, La. voting and was not qualified
 to vote.
10.Triston L McGlothin 702 Texas Avenue On probation at time of
 Ferriday, La. voting and was not qualified
 to vote.
11. Bennie Quinn, Jr. 802 Concordia Drive On probation at time of
 Ferriday, La. voting and was not qualified
 to vote.
12. Ike Washington, Jr.512 S. 7th On probation at time of
 Ferriday, La. voting and was not qualified
 to vote.
13. Louis L. Vogt Courthouse, Vidalia, La. Non-resident
 (Indigent Defender's Office)
14. Vernon E. White Ferriday Western Auto Non-resident
 Louisiana Ave.
 Ferriday, La.
15. Robin R. Fuller Black Bayou Road Non-resident
 Ferriday, La.
16. Vernon M.White, Sr.Ferriday, Western Auto Non-resident
 Louisiana Avenue
 Ferriday, La.
17. Mary White Ferriday Western Auto Non-resident
 Louisiana Ave.
 Ferriday, La.
18. Kenny Wagoner Corrall Drive Through S. E.E. Non-resident
 Wallace Blvd.
 Ferriday, La.
19. Pixley AnnetFuller Black Bayou Road Non-resident
 Ferriday, La.
20. Edward Schiele Ferriday Farm Equipment Co. Non-resident
 Lake Drive
 Ferriday, La.
21. Pasty Jones Unifed Savings and Loan Non-resident
 N. E.E. Wallace Blvd.
 Ferriday,
22. Lavelle Seals Hiway 84 West of Ferriday Non-resident
 next to Red Top Seafood
 EXHIBIT B (Page 2)
23. Roger Seals Hiway 84 West of Ferriday Non-resident
 next Red Top Seafood
24. Peggy Lee Crumb Concordia Apartment's #80 Non-resident
 Ferriday, La.
25. Freddie M. Green Concordia Apartment's #67 Non-resident
 Ferriday, La.

*1331
26. Harriett Green Ferriday City Hall Non-resident
 Ferriday, La.
27. Brenda Ann Green Woodmount Drive Non-resident
 Levee Heights (Sycamore)
 Ridgecrest, La.
28. Carolyn Denise Non-resident
Curry Levee Heights (Sycamore)
 Ridgecrest, La.
29. Richard Green, Jr. South/East corner of Concordia Non-resident
 Park Road and Moose
 Lodge Road
 Vidalia, La.
30. Ester Reed Non-resident
 Alexandria, La.
31. Fulton Wilkerson Doty Road Non-resident
 Ferriday, La.
32. Margurette Doty Road Non-resident
Wilkerson Ferriday, La.
33. Robert E. Franklin Jonesville, La. Non-resident
34. Jessie Sims Hiway 15 Non-resident
 Ferriday, La.
35. Diedra Ceasor Non-resident
 Levee Heights (Sycamore)
 Ferriday, La.
36. Janice Thomas Concordia Apartment's # 30 Non-resident
 Ferriday, La.
37. Mary D. Fletcher Clayton Hiway, trailer park Non-resident
 behind Dr. Doo"Rite Lounge
38. Cynthia Taylor Concordia Apartment's # 47 Non-resident
 Ferriday, La.
39. Dianne Davis 204 South Tenth Street Non-resident
 Ferriday, La.
40. Delores Davis 204 South Tenth Street Non-resident
 Ferriday, La.
41. Marshall E. Johns Big Johns Hamburger's Non-resident
 S. E.E Wallace Blvd.
 Ferriday, La.
42. Ethel Lee Bethley Washington Heights (Clayton Non-resident
 Hiway)
 Ferriday, La.
43. Sam H. Williams Ferriday/Clayton Hiway Non-resident
 Ferriday, La.
44. Beatrice Marie Ferriday/Clayton Hiway Non-resident
Williams Ferriday, La.
45. Nina Holmes 1007 Hiway 15 Non-resident
 Ferriday, La.
46. Norma Holmes 1007 Hiway 15 Non-resident
 Ferriday, La.
 EXHIBIT B (Page 3)
47. Johnny Loomis State Probation and Parole Can present evidence that
 Agent persons are on probation.
 Virginia Ave.
 Ferriday, La.

*1332
48. Emma Lee Holmes Montgomery Square Voted absentee and again
 Ferriday, La. voted on election day.
49. Carolyn Jones Voted absentee and again
 voted on election day.
50. J.P. Shine House Registrar of Voter's Allowed voting absentee
 Courthouse without determining qualifications
 Vidalia, La. of voter.
51. Goldie Ensminger Registrar of Voter's Office Allowed voting absentee
 Courthouse without determining qualifications
 Vidalia, La. of voter.
52. Linda Seward 400 block of Tennessee Ave. Voted absentee but remained
 Ferriday, La. in town on election
 day. Seen by Lyle Schiele.
53. Lynell Seward 400 block of Tennessee Ave. Voted absentee but remained
 Ferriday, La. in town on election
 day. Seen by Lyle Schiele.
54. Howard Lee Bethley Delaware Avenue Voted absentee but remained
 Ferriday, La. in town on election
 day. Seen by several person's.
55. Louis Bowman South East corner of Tenth Voted absentee but remained
 and La. in town on election
 Ferriday, La. day.
56. Michael A. Brown Voted absentee but remained
 in town on election
 day.
57. Kimberly A. Carter Voted absentee but remained
 in town on election
 day.
58. Vivian A. Clark Voted absentee but remained
 in town on election
 day.
59. H.P. Grimble Voted absentee but remained
 in town on election
 day.
60. Robert Williams c/o Concordia Parish Sheriff's Transported nursing home
 Dept. patients from Concordia
 Vidalia, La. Rest Home to polls on election
 day to sheriff's unit.
61. Willard Johnson c/o Mayor Davis Observed incident that initiated
 investigation.
 EXHIBIT B (Page 4)
9 March 1988
SUBJECT: Non-residents voting inside Ferriday City Limits during March 8, 1988
election.
NAME WARD/PRCT CORRECT RESIDENCE
Louis L. Vogt Absentee Monterey, La.
Vernon E. White Absentee Persimmon Mill Road

*1333
Robin R. Fuller 2/1 Black Bayou Road
Vernon M. White, Sr. 2/1 Persimmon Mill Road
Mary White 2/1 Persimmon Mill Road
Kenny Wagoner 2/1 Natchez, MS
Pixley Annette Fuller 2/1 Black Bayou Road
Edward Schiele 2/1 Natchez, MS
Patsy Jones 2/1 Doty Road
Lavelle Seals 2/1 Highway 84, West of Ferriday
Roger Seals 2/1 Highway 84, West of Ferriday
Peggy Lee Crum 1/2 Concordia Apartments, # 80
Freddie M. Green Absentee Concordia Apartments, # 67
Harriett Green 1/2 Levee Heights (Sycamore)
Brenda Ann Green 1/2 Levee Heights (Sycamore)
Carolyn Denise Curry 1/2 Levee Heights (Sycamore)
Richard Greene, Jr. 1/1 Concordia Park (Vidalia)
Easter Reed 1/2 Alexandria, Louisiana
Fulton Wilkerson 1/2 Doty Road
Margaret Wilkerson 1/2 Doty Road
Robert E. Franklin 1/1 Jonesville, LA
Jessie Sims 1/1 Highway 15
Diedra Ceasor 1/1 Levee Heights (Sycamore)
Janice Thomas 1/2 Concordia Apartments, # 30
Mary D. Fletcher 1/1 Ferriday/Clayton Highway
Cynthia Taylor 1/1 Concordia Apartments, # 47
Dianne Davis 1/1 204 South Tenth (outside city)
Delores Davis 1/1 204 South Tenth (outside city)
Marshall E. Johns 1/2 Levens Addition Highway 84 West
Ethel Lee Bethley Absentee Washington Heights (Clayton Highway)
Sam H. Williams 1/2 Ferriday/Clayton Highway
 EXHIBIT B (Page 5)
NAME WARD/PRCT CORRECT RESIDENCE
Beatrice Marie Williams 1/2 Ferriday/Clayton Highway
Nina Holmes 1/1 Highway 15
Norma Holmes 1/1 Highway 15

In addition to the above named individual non-resident voters, the following voter has
changed residences within the city
limits of Ferriday from Ward 1 precinct 2 to Ward 1
precinct 1. However, continues to vote at Ward 1 precint
2. Deloris Ford Now resides on Fudikar Street in Ferriday
All of the above persons are known to reside at the locations listed and are known or have
been residing at those locations for length of times in excess of three (3) months.